**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **VALERIE DORSEY, and**<br>**MARIBELLE SABIO**,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>**DISTRICT OF COLUMBIA**<br>**DEPARTMENT OF HEALTH**,<br><br>　　　　Defendant. | No. 25-cv-4045 (TSC) |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Valerie Dorsey and Maribelle Sabio assert discrimination, retaliation, and hostile work environment claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, against the District of Columbia Department of Health. *See generally* Am. Compl., ECF No. 14. Defendant moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See generally*, Mot. to Dismiss, ECF No. 15. For the following reasons, the court will GRANT in part and DENY in part Defendant's motion to dismiss.

## I.　　BACKGROUND

Plaintiffs, each more than 40 years old at all relevant times, were employed by Defendant as Program Coordinators for the Centers for Disease Control Project Firstline initiative for several years until the non-renewal of their appointments in 2024. *See* Am. Compl. ¶¶ 8–12, 39. Sabio began as a contractor in July 2021 and transitioned to a full-time Program Coordinator in November 2021; Dorsey was hired as a Program Coordinator in June 2022. *See id.* ¶¶ 8–12. According to Plaintiffs, Defendant engaged in a pattern of age discrimination against them by

paying them "less than younger employees with comparable or similar qualifications, including Saria Widatalla, a Program Coordinator, and Charity Gaitirira, an epidemiologist." *Id.* ¶ 40. Defendant hired Widatalla, who was "younger and less experienced," at a "significantly higher salary" than Plaintiffs, *id.* ¶ 41, and similarly appointed Gaitirira "through a 'named selection' process . . . [at] compensation exceeding Plaintiffs' pay," *id.* ¶ 42. In October 2022, Plaintiffs' supervisor, Candace Johnson, promised Sabio a Quality Step Increase ("QSI") in recognition of her "exceptional performance" and reaffirmed that promise on at least two occasions. *Id.* ¶¶ 13–14. Neither Plaintiff received a QSI. *Id.* ¶ 49. Between May and August 2023, Plaintiffs unsuccessfully requested salary increases to reflect their expanded duties as epidemiologists and Program Coordinators overseeing program execution, compliance reporting, and staff training. *Id.* ¶¶ 15–17, 26.

In August 2023, Plaintiffs presented "written and verbal complaints" of "age-based pay disparities, harassment, and retaliation" to managers Anil Mangla and Fern Johnson-Clarke. *Id.* ¶ 18. Mangla and Johnson-Clarke "confirmed that Plaintiffs had gone above and beyond their job descriptions" and directed Johnson to process their raises by October 31, 2023. *Id.* ¶¶ 27–28. Johnson not only failed to do so, but also restricted Plaintiffs' travel budgets, in-person training, and conference opportunities. *Id.* ¶¶ 29, 45–48, 55. In November 2023, despite Plaintiffs' "documented performance, positive partner feedback, and timely completion of grant deliverables," Johnson downgraded their evaluations below the 4.0 threshold required for a QSI or equivalent merit increase. *Id.* ¶¶ 32–35. Until then, Sabio's rating had been "tracking at 4.10." *Id.* ¶ 31.

Plaintiffs filed age discrimination complaints with the D.C. Office of Human Rights ("OHR") in February 2024; submitted a formal letter of complaint to DC Health's Human

Resources Department in April 2024; and filed charges with the Equal Employment Opportunity Commission ("EEOC") in June 2024. *Id.* ¶¶ 19–21. In July 2024, Defendant declined mediation with Dorsey and held mediation with Sabio that produced no resolution. *Id.* ¶¶ 22–23. In December 2024, Plaintiffs received Notices of Charges of Discrimination and Mandatory Mediation Letters from OHR. *Id.* ¶ 24. Between June 2023 and October 2024, Johnson repeatedly stated—and Defendant's internal budget spreadsheets confirmed—that funding for Plaintiffs' positions remained secure through 2027. *Id.* ¶¶ 37–38, 57. But on December 9, 2024, Plaintiffs received non-renewal notices citing "lack of funding." *Id.* ¶ 39.[1]

Plaintiffs filed suit in June 2025, alleging age discrimination, retaliation, and a retaliatory hostile work environment in violation of the ADEA, and seeking declaratory and injunctive relief and damages. *Id.* ¶¶ 3, 75–82.

## II.  LEGAL STANDARD

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The court must assume all "well-pleaded factual allegations"

---

[1] While Plaintiffs filed EEOC charges in June 2024, before the December 2024 non-renewal notices, Defendant does not argue that they failed to exhaust any claims premised on the non-renewals. Because administrative exhaustion is a non-jurisdictional claim-processing requirement, *see Fort Bend Cnty. v. Davis*, 587 U.S. 541, 551–52 (2019), the court deems any such exhaustion argument forfeited for purposes of this motion, *see Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("A party forfeits an argument by failing to raise it in his opening brief.").

are accurate, *Iqbal*, 556 U.S. at 679, and "grant plaintiffs the benefit of all inferences that can be derived from the facts alleged," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). But mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

### III.     ANALYSIS

### 1. ADEA Discrimination

The ADEA makes it "unlawful for an employer" to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Although a plaintiff need not plead a prima facie case of discrimination at the motion-to-dismiss stage, *see Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011), courts look to the prima facie elements to determine "whether the plaintiff can ever meet [her] initial burden to establish a prima facie case." *Redmon v. U.S. Capitol Police*, 80 F. Supp. 3d 79, 86 (D.D.C. 2015) (quoting *Hutchinson v. Holder,* 668 F.Supp.2d 201, 211–12 (D.D.C. 2009)). To do so, a plaintiff must show that "(1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class)." *Forkkio v. Powell,* 306 F.3d 1127, 1130 (D.C. Cir. 2002). "A plaintiff can raise an inference of discrimination by showing 'that she was treated differently from similarly situated employees who are not part of the protected class.'" *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (quoting *George v. Leavitt,* 407 F.3d 405, 412 (D.C. Cir. 2005)).

Courts in this Circuit "have consistently recognized the 'ease with which a plaintiff claiming employment discrimination can survive . . . a motion to dismiss.'" *Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011) (quoting *Rouse v. Berry*, 680 F. Supp. 2d 233, 236 (D.D.C. 2010)).  "The factual detail required to survive a motion to dismiss can be quite limited." *Hill v. Bd. of Trs. of the Univ. of D.C.*, 146 F. Supp. 3d 178, 184 (D.D.C. 2015). Courts "rarely require more than an assertion that the plaintiff suffered an adverse action due to his age, so long as this assertion is accompanied by sufficient facts to put the defendant on notice of the incidences giving rise to the claim." *Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 315 (D.D.C. 2015).  Nevertheless, a plaintiff must "plead sufficient facts to show a plausible entitlement to relief," *Fennell*, 770 F. Supp. 2d at 127, as the court "cannot 'create something out of nothing,'" *Arnold v. Speer*, 251 F. Supp. 3d 269, 273 (D.D.C. 2017) (quoting *Jianqing Wu v. Special Counsel, Inc.*, 54 F. Supp. 3d 48, 56 (D.D.C. 2014)).

In the face of these liberal pleading requirements, Defendant argues that Plaintiffs have not alleged facts sufficient to support an age-discrimination claim based on pay disparities between Plaintiffs and similarly situated younger employees.  The court disagrees.

As a preliminary matter, the parties do not dispute that Plaintiffs are members of a protected class under the ADEA.  *See* 29 U.S.C. § 631(a).  And Defendant does not contest that denied raises or lower pay "are the typical adverse actions in employment discrimination cases." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  The parties' dispute centers on causation.  Plaintiffs allege that Widatalla and Gaitirira, who are substantially younger and less experienced, were hired at significantly higher salaries despite being subject to the same evaluation, compensation, and supervisory structure as Plaintiffs.  *See* Am. Compl. ¶¶ 40–42, 53; Opp'n at 7, ECF 16.  Plaintiffs further contend that they each individually performed the

*combined* responsibilities of both younger employees, in addition to overseeing program execution, compliance reporting, and staff training.  Am. Compl. ¶ 16.  Finally, Plaintiffs allege that they consistently exceeded role expectations and were repeatedly promised corresponding pay increases that never materialized.  *See id.* ¶¶ 13–14, 32.

At this stage, Plaintiffs need not prove that their comparators were identical in every respect.  It is enough to allege that substantially younger employees in comparable or less demanding roles within the same compensation and supervisory structure received materially higher pay despite Plaintiffs' greater experience and expanded responsibilities.  These allegations clear the minimum pleading threshold.  *See, e.g.*, *Bowe-Connor v. Shinseki*, 845 F. Supp. 2d 77, 89 (D.D.C. 2012) (allegations that plaintiff was labeled one of the "GOLDEN GIRLS" and that supervisors failed to curtail such conduct sufficient to plausibly support age-based salary discrimination claim); *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 376 (D.D.C. 2018) (allegation that younger managers received lesser discipline despite unsatisfactory performance sufficient); *Jones v. District of Columbia*, 273 F. Supp. 2d 61, 66 (D.D.C. 2003) (allegation that employer "[r]emoved . . . senior employees while preferring younger employees" sufficient); *Washington v. D.C. Hous. Auth.*, 170 F. Supp. 3d 234, 241–42 (D.D.C. 2016) (allegations that the plaintiff was qualified, was terminated because of age, and told "too bad you didn't fit in" sufficient).  Plaintiffs' discrimination claim therefore survives.

### 2.  ADEA Retaliation

"To state a claim for retaliation under the ADEA, a plaintiff must allege that '(1) he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) a causal link connects the two.'"  *Golden*, 319 F. Supp. 3d at 370 (quoting *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)).  An action is materially adverse if it

"could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Defendant does not contest that Plaintiffs engaged in protected activity through their August 11, 2023 internal complaints, Am. Compl. ¶ 18; their February 4, 2024 OHR charge, *id.* ¶ 19; their April 5, 2024 communication to human resources, *id.* ¶ 20; and their June 2024 EEOC charges, *id.* ¶ 21. *See, e.g.*, *Bell v. Gonzales*, 398 F. Supp. 2d 78, 94 (D.D.C. 2005).

Plaintiffs have also plausibly alleged that they were subject to materially adverse employment actions. Plaintiffs point to Defendant's refusal to process their raises, their downgraded performance evaluations—which disqualified them for pay increases—and their non-renewal notices. Am. Compl. ¶¶ 32–35, 66. Termination, denial of expected salary increases, and performance evaluations carrying financial consequences are prototypical materially adverse actions. *See Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) ("Tangible harm akin to 'firing' . . . is obviously materially adverse."); *Russell v. Principi*, 257 F.3d 815, 819 (D.C. Cir. 2001) (explaining that deprivation of monetary bonuses, salary, and other tangible, quantifiable awards qualify as materially adverse); *Baloch*, 550 F.3d at 1199 ("[P]erformance reviews typically constitute adverse actions . . . when attached to financial harms.").

Plaintiffs' allegations support a plausible causal connection between their protected activity and the denial of merit increases, but not as to the later non-renewal notices. Temporal proximity can suggest causation where "the employer had knowledge of the protected activity and . . . the adverse action occurred soon thereafter." *Marshall v. Potter*, 634 F. Supp. 2d 66, 73 (D.D.C. 2009). "Although courts have not established the maximum time lapse between protected . . . activity and alleged retaliatory actions for establishing a causal connection, courts

generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length." *Brodetski v. Duffey,* 141 F. Supp. 2d 35, 43 (D.D.C. 2001); *Allen v. Napolitano*, 774 F. Supp. 2d 186, 201 n.2 (D.D.C. 2011) ("In the D.C. Circuit, courts have held that alleged retaliatory acts must occur within three or four months of the protected activity to establish causation by temporal proximity.").

Plaintiffs allege that 17 days after their initial complaint to Mangla and Johnson-Clarke, Johnson announced that no raises would be granted—despite having repeatedly promised Sabio a QSI in recognition of her strong performance and having advocated on her behalf. Am. Compl. ¶¶ 13–14, 18, 20, 26. Even after Mangla and Johnson-Clarke confirmed that Plaintiffs had exceeded expectations and DC Health management directed that their raises be processed by October 31, 2023, Johnson refused. *Id.* ¶¶ 26–29. In other words, within three months of their protected activity, Johnson reversed course in direct contravention of explicit direction from upper management. Similarly, three months after Plaintiffs' initial complaint, Johnson downgraded their evaluations below the QSI threshold—despite Sabio having tracked above it and Mangla and Johnson-Clarke's confirmation that Plaintiffs "had gone above and beyond their job descriptions." *Id.* ¶¶ 27, 31, 32–34. These allegations are sufficient, at this stage, to raise a plausible inference of retaliation. *See Bryant v. Pepco*, 730 F. Supp. 2d 25, 32 (D.D.C. 2010).

The non-renewal notices stand on different footing. The most recent protected activity that could anchor that claim is the June 2024 EEOC charge, filed roughly six months before the notices issued.[2] A gap of that length does not, standing alone, support a causal inference. *See*

---

[2] To the extent Plaintiffs argue that the December 4, 2024, OHR Notice of Discrimination Charge constitutes additional protected activity, the court is unpersuaded. Protected activity encompasses filing complaints, initiating EEO counseling, and invoking informal grievance procedures—not receiving administrative notifications that such complaints have been received.

*Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 311 (D.D.C. 2015) ("When relying on temporal proximity alone to demonstrate causation, there is no bright-line rule, although three months is perceived as approaching the outer limit."); *Hamilton v. Geithner,* 666 F.3d 1344, 1357–58 (D.C. Cir. 2012).    To be sure, "[a] large gap between protected activity and retaliation is not necessarily fatal to a claim when the plaintiff can point to other factors leading to an inference of causation."  *Greer*, 113 F. Supp. 3d at 311.  But Plaintiffs allege no such factors.  To the contrary, they allege that in the months immediately following the EEOC filings, Johnson repeatedly informed Plaintiffs that funding for their positions was secure; the non-renewal notices came from broader management in December.  *See* Am. Compl. ¶¶ 21, 37, 39.  Nor is this case like those in which courts have bridged a comparable temporal gap because the decisionmaker responsible for the adverse action was the same person accused of discrimination or retaliation.  *See Buggs v. Powell*, 293 F. Supp. 2d 135, 149–150 (D.D.C. 2003) (inferring causation despite seven-month gap where official responsible for promotions was under investigation for plaintiff's complaint); *Payne v. District of Columbia*, 4 F. Supp. 3d 80, 89–90 (D.D.C. 2013) (inferring causation despite six-month gap where plaintiff was terminated by individuals he had accused of retaliation).  Plaintiffs allege no comparable nexus between the non-renewal decisionmakers and their protected activity.

Because the Amended Complaint nonetheless states a plausible retaliation claim based on performance downgrades and withheld pay increases, dismissal is not warranted on this count.

### 3.  ADEA Retaliatory Hostile Work Environment

To prevail on their hostile work environment claim, Plaintiffs must allege that they were "subjected to discriminatory intimidation, ridicule, and insult that was sufficiently severe or

---

*See, e.g.*, *Richardson v. Gutierrez*, 477 F. Supp. 2d 22, 27 (D.D.C. 2007); *Bell*, 398 F. Supp. at 94–95.

pervasive to alter the conditions of her employment and create an abusive working environment." *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014) (cleaned up). "[T]he court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Graham v. Holder*, 657 F. Supp. 2d 210, 216 (D.D.C. 2009). This is a demanding standard: even "abusive behavior . . . motivated by discriminatory animus" must be "*extreme*" to be actionable. *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 78 (D.D.C. 2007) (cleaned up). A *retaliatory* hostile work environment claim additionally requires "a causal connection between the harassment and [the] protected activity." *Graham*, 657 F. Supp. 2d at 216.

Plaintiffs fail to state a plausible claim. They argue that Defendant's "persistent denial of merit-based raises," Am. Compl. ¶¶ 29, 35; "failure to issue a promised QSI," *id.* ¶¶ 13, 35; "downgrading of performance evaluations following Plaintiffs' protected activity, despite strong performance," *id.* ¶¶ 30–35; "exclusion [of Plaintiffs] from key meetings, trainings, and collaborative initiatives with CDC partners," *id.* ¶ 48; and "issuance of non-renewal notices terminating Plaintiffs' positions," *id.* ¶ 39; constituted "an ongoing campaign of hostility based on retaliation that, when viewed in its entirety, altered the terms and conditions of Plaintiffs' employment." Opp'n at 14.

In grounding their hostile work environment claim in a series of discrete acts involving different types of employment decisions by different actors, Plaintiffs misunderstand the nature of a hostile work environment claim. A plaintiff "cannot so easily bootstrap alleged retaliatory incidents into a broader hostile work environment claim." *Keeley v. Small*, 391 F. Supp. 2d 30, 51 (D.D.C. 2005); *see Franklin v. Potter*, 600 F. Supp. 2d 38, 77 (D.D.C. 2009) ("Cobbling

together a number of distinct, disparate acts will not create a hostile work environment."). As the Supreme Court has explained, "[h]ostile environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). A plaintiff must allege "'one unlawful employment practice' of pervasive, insulting, discriminatory conduct that makes the plaintiff's day-to-day work environment severely 'abusive.'" *Rattigan*, 503 F. Supp. 2d at 82 (quoting *Morgan*, 536 U.S. at 117). When a claim rests on the "cumulative effect" of "several individual acts," "those actions must be adequately linked such that they form a coherent hostile environment claim." *Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, 134 F.4th 585, 597 (D.C. Cir. 2025) (cleaned up). Relevant factors include "the frequency of the individual acts and whether they involve the same managers and the same kind of employment action." *Id.* at 597–98; *see Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011).

Plaintiffs' allegations do not clear that bar. The acts they invoke span more than two years, involve qualitatively different employment decisions, and are not all attributable to the same decisionmaker. *See Shanks*, 134 F.4th at 598. While the Amended Complaint attributes the raise denials, evaluation downgrades, and travel restrictions to Johnson, the non-renewal notices—the most consequential adverse action—came from different management, undermining any inference of a unified campaign. Several of the remaining acts, including exclusion from meetings and professional development opportunities, are not the sort courts have found "sufficiently offensive, intimidating, or out of the ordinary in a typical workplace to change the conditions of the plaintiff's employment." *Heavans v. Dodaro*, 648 F. Supp. 3d 1, 18 (D.D.C. 2022); *see Johnson v. Perez*, 66 F. Supp. 3d 30, 44 (D.D.C. 2014) (collecting cases). The remaining acts duplicate those underlying Plaintiffs' discrimination and retaliation counts and do

not independently supply the necessary element of pervasive intimidation, ridicule, or insult. *See*

*Keeley*, 391 F. Supp. 2d at 51. Dismissal is therefore appropriate.

## IV.    CONCLUSION

For the foregoing reasons, the court will GRANT in part and DENY in part Defendant's

Motion to Dismiss, ECF No. 15. A separate order will accompany this Memorandum Opinion.


Date: June 25, 2026

*Tanya S. Chutkan*
_____
TANYA S. CHUTKAN
United States District Judge